Good morning, and may it please the Court, Jonathan Tico for the appellant. I'd like to reserve three minutes. This case is about how anesthesiology services are paid for by the government. Medicare and the other government health care programs rely on a series of codes and modifiers that are used in claims for payment to describe both what services were provided and who provided those services. The payors, those are the Medicare administrative contractors, the MACs, they rely on those codes and modifiers to process that claims and to determine how much of the government's money to disperse in response to those claims. Those codes and modifiers, which number into the thousands, they cover every possible type of medical procedure available in the health care system, those are not statutes or regulations. They are simply a shorthand way of conveying factual information about the medical procedures and for which providers the payment is sought. The modifiers in particular can be thought of as little functions that go into the longer equations that the MACs use to process the claims and determine how much to pay. The defendant's position in this case amounts to the claim that it does not matter how the government or the MACs or the providers themselves interpret those modifiers if a judge in a single litigated case and without the benefit of a factual record arrives at a different understanding. Well, it's pretty striking in the guidelines. It's very careful about distinguishing between medically supervised and medically directed. And the QC code modifier's explanation says CRNA or anesthesiologist assistant service without medical direction. So how is that an instruction that you can't use QC, QZ, if you have a CRNA with medical supervision because it doesn't meet the text? Right. Of course, that is the crux of the matter on appeal, Your Honor. And I will explain to you why the district court's conclusion about that and why the defendant's position is actually wrong. But the broader question here is should that be an issue that is decided on a motion to dismiss by a judge where the factual allegation is that the actual parties to the contemporaneous transaction, both the providers and the MACs, have a different understanding? And I have to admit right at the beginning the actual factual understanding of that modifier. But is it your position that if there's a regulation that says this is how the billing is to be done, but in the real world everyone treats the regulation as if it has the word not in it and does the opposite, that it's a false claim to follow the rule as written? That would be a different situation, Your Honor, because you used the word regulation, and that's the word that the district court used over and over again. But still, this is a billing guideline. It's the only sort of guidance as to what the code means in some sort of ---- That's actually ---- I'm sorry. Go ahead. When you say it's the only guidance, that is not correct, Your Honor. There is lots of other guidance out there, and the actual industry understanding of how to bill for medically supervised CRNA-provided anesthesiology, because that's what we're talking about, right? We're talking about a situation where the nurse was in the operating room providing the anesthesiology with medical supervision but not medical direction by an MD, right? So that's the factual circumstance we're dealing with here. The understanding, and again, we allege this in the Second Amendment complaint, that this was actually PST's understanding, that the correct way to bill for that is not with QZ. All right? The correct way to bill for that is with QX, even though QX talks about medical direction, and, and this is important, and with AD, because the claim has to account for both the nurse and for the MD. So if, so you're saying that if they use a CRNA and it's medical supervision but not medical direction, they should submit a bill that says QX, even though QX in the written guidance says CRNA service with medical direction, and they didn't have, it's not with medical direction. So this is my hypothetical where you're basically adding the word not to the written guidance. I, like I said, I have to concede that you're reading of the definition of the modifiers in the manual, because that's where that definition comes from. It's not in the regulation. It's not in the statute. It's in the manual. Your reading would be a perfectly fine, plain-meaning reading if we were talking about a statute or a regulation, but what matters in this context is not what reading you would give or what reading I would give. That's not what matters. What matters is what was the understanding of the providers and the MACs, because if they had a different understanding, then the claim was false, factually false. And to address what you're saying more directly, that understanding that the correct way to bill for it is using QZ cannot be right. And let me demonstrate why that is. This isn't like some private party's manual. This is CMS's own manual, correct? Yes, they are the author of that manual. And it has no authoritative significance at all? Well, let me put it this way. If PST submitted a claim using QZ for a medically supervised CRNA procedure and the MAC denied the claim, they would not be able to go back to the MAC and say, yeah, yeah, yeah, but the modifier says you have to pay it. The MAC would say, no, you submitted the claim wrong. You don't get paid. And they would have no claim, because the manual is not a binding law. It's not a rule. It's not a regulation. It's not something that they can sue on. But also, let me get to a deeper point here, Your Honor, which is that their understanding, the defendant's position, their litigated position, not their actual position, by the way, because in the complaint we allege that PST's actual understanding is that they have to bill that service using AD and QX, okay, that they have to account for both the doctor and the nurse, and that's the way that they have to bill it. That was their understanding. That's what the complaint alleges, and we're entitled to the truth of that allegation. But let me show you why they cannot be right. The prime directive for paying anesthesia, this comes out of the regulations, the actual law, 42 CFR 414.46B. This is the prime directive from CMS to the MACs. The fee schedule amount, that's the defined term. The fee schedule amount is the maximum amount that the government will ever pay for an anesthesia service. What is the fee schedule amount? It is determined based on the number of units. What are units? Each type of anesthesia procedure that has a unique CPT code, that has a certain number of base units, and then for every 15 minutes of the procedure, one additional time unit is added. Okay, so add up those number of units. That tells you what the maximum amount is that the government will pay. That is law. That is law. That is CMS's legal direction to the MACs. Now, if in this situation PST is allowed to bill supervised anesthesia using QZ, only one of two things can possibly happen. Either the MAC doesn't know that a doctor was involved, in which case they assume it's CRNA independent practice and they will pay 100% of the units to the CRNA. They will pay the maximum. Or they find out that there was a doctor involved. Now, how would they find that out? I don't know. Somebody would have to tell them. But if they found out that the doctor was involved, they would pay less than that under most operating room circumstances. Can you explain to me, so what's the, I guess, the false certification? What's the rule? What's the law that you're saying that was violated here? What specifically are you saying was violated here? That by billing CRNA medically supervised procedure as if it was CRNA independent, they were making a factually false statement to the government payer that resulted in them being paid more money than the government would have paid had the government known what actually occurred in the operating room. And their reliance on the manual's literal definition is incorrect? It is incorrect. And PST, the actual company, knows that, as we allege in the complaint. They know that it's incorrect. Their position here in the court is that it is correct, applying the sort of plain meaning of the modifier rule. But remember what the modifiers actually are. This is really crucial. The modifiers are just little functions that go into the computer systems that the MACs use to pay. What does the QZ modifier mean? It means allocate 100% to the CRNA. What does QX mean? QX means allocate 50% to the CRNA. So what is the correct function to use in a situation where you have a medically supervised CRNA? The correct function, and we all agree a bit on this. I don't think the defendants dispute this. The correct function is pay the CRNA 50% and then pay the doctor, the MD, an amount that is subject to the three- or four-unit cap. And, again, that three- or four-unit cap, that comes directly out of the regulation. That is law. The doctor cannot be paid for more than four units. In the medically directed situation, what are the two codes that are used? QX for the CRNA, and what code is used for the doctor? QK is medical direction by an MD. Okay, so it would be QX and QK in medically directed, and that would be 50% to each. Correct. Right, and this is the other important factual thing to remember. Where you have both a doctor and a nurse involved, there has to either be two separate claims or there has to be one claim with two separate lines. I mean, we talk about claims and lines. This is all just done electronically. But, effectively, what the MAC gets is two different claims, one for the doctor and one for the nurse. And they have to submit both. I mean, this is the other part of our allegations that the district court just totally ignored. The district court focused only on the QZ modifier without recognizing that the other part of our allegation was that they had failed to disclose the involvement of the doctor. And the involvement of the doctor is what affects payment. So what would happen if they submitted both QZ and AD? Well, one of two things could happen in practice, Your Honor. And I have to say I'm going to tell you something that's outside the record because this is not alleged in the complaint. But one of two things would happen. Either the MAC would recognize that and it would be denied for what are called edits, which just means you submitted the codes wrong, try again. Or the MAC would not recognize that these were the same procedures and they would end up paying more than 100%. In other words, they would violate the prime directive. They would pay more of the government's money than they're supposed to because they were misled about who was involved. But in this case, they just submitted nothing for the doctor and just submitted the QZ for the CRNA. Oh, yes, absolutely. That's the allegation, and I don't think that's disputed even. I'd like to reserve the rest of my time unless you have other questions for me right now. All right. Thank you, Counselor. All right. Then we will hear now from Ms. Ellsworth. Good morning, and may it please the Court. Jessica Ellsworth for APELI PST Services. We think this appeal is straightforward to resolve for the reasons outlined in your questions, Judge Collins. Ms. O'Neill's False Claims Act theory against PST Services asserted that it was fraudulent to bill anesthesia care by a CRNA if there was any physician involvement using the CZ modifier and that physician involvement mandated using the QX modifier. But if you read these codes literally as they're reflected in the manual, and you're not an expert in this field, you would think that the right thing to do is to submit both the QZ and the AD, and the manual doesn't say what happens in that situation. It does say what happens if you do the QX and the QK together, but it doesn't say what would happen if you did QZ and AD together. What would happen? I agree that that is not in the record, and I think that does happen because as we point out in our briefs. But here's the part of your position that just doesn't make any sense, which is that if you have a doctor who is personally participating in the anesthesia procedure, so it's medically directed, and is assisting in that intensive way the CRNA, you submit both, they only get 50%. But if the medical doctor, rather than being intensively involved in that, is loosely supervising four or more, then you would submit the CRNA and you get 100%, and in theory you'd submit both and you'd get more. How can it be that providing less service gets more reimbursement? It makes no sense. Well, Your Honor, I don't think that there is a world in which anyone is getting more than 100%, so I just want to point that out. Well, because you don't put down the AD code. I think if there is an AD code, so if we have, for example, a CRNA who is employed by the hospital and an anesthesiologist who's employed by a separate practice, and so two claims go in, they're not always going to be on the same claim, and the appellants agree with this. So the reason to have the AD code available is because sometimes the CRNA or the assistant will not be submitting through the same employer. They'll have different employers, so they both need to get paid. And so if they are through different... Okay, now let me understand now. Suppose they're from different employers, but it's medically directed. Do they still get haircut at 50% each? They would each get the 50% because the physician would use the medically directed code for physicians, the CRNA would use the medically directed code for CRNAs, and they would each get paid 50%. Okay, but if the outside doctor who's with a different practice and is submitting a different bill is loosely supervising four or more, so it's medically supervised rather than medically directed, they will in fact get more payment because they're not going to get haircut at down to 50%. You're going to get 100% on the CNRA and 100% on the... That makes no sense. Well, Your Honor, I don't think there's any allegation that that is what would happen. Of course, here they were not coming from different employers, so that situation was not... No, I understand that, but we have to realize what are the implications of what we're buying and reading this manual, and that seems to follow from your position, that if you provide less service in the two-biller scenario, you provide less medical service, you get more money. But, Your Honor, I think the MACs would have to have a way to resolve that scenario because there is a requirement. That suggests maybe you should have submitted both codes and found out what they would do with that. Instead, you withhold the second code and submit to get the full reimbursement, avoid the haircut. So, Your Honor, I think if I could direct the court to look at paragraph 36 of the plaintiff's complaint because it is a different argument than what Your Honor's premise, the premise of your question is here today. The relator's theory was that when you had both individuals involved, you had to combine the AD code, the medical supervision code for the doctor, with the QX code, the medical direction for the CRNA, even though there was no medical direction. So their theory was not to combine the medical supervision of the doctor with the QZ code. That was not their theory, that you should have submitted both. It was that QZ could only be used in this circumstance. And I heard my friend tell you today that the MAC, we have to listen to what the MAC said on this. That is exactly what the district court did. If you look at SER 114, it is a document that the district court took judicial notice of. It is from Noridian, the MAC that is in charge of California, and it's a question and answer. And the question is, are there instances when a CRNA would not use the QZ modifier? And the answer that Noridian provided was that a CRNA would not use the QZ modifier if there's medical direction or there's something called monitored anesthesiology care, which is not at issue in this case. So Noridian's direction was the only time you don't use QZ for a CRNA is if you have medical direction. That's what the manual says. It's also, if we look beyond the manual, there is a regulation, 42 CFR 414.60. It's cited on page 6 of our brief. It's the regulation that authorizes payment to CRNAs. And it likewise sets up two buckets, medically directed and not medically directed. This is consistent with the manual, with the regulation, with the MAC who was in charge of paying these claims. QZ, the line that CMS has chosen to draw for CRNAs is this. Is there medical direction? If so, we pay at one rate. If there's not medical direction for the CRNA, we pay at a different rate. For doctors, it's different. If a doctor wants to bill, there's more than those two buckets. And so a doctor's bill would have to comply with the modifiers that are available for doctors to use based on the doctor's care. But for CRNAs, there are these two buckets, and the line that is drawn is this medical direction line. It's not an involvement of a doctor line. So the district court, I think, was exactly right in understanding that there is no legal falsity in using the QZ modifier under the terms that the manual says it can be used. And that is what the district court held. It was a very straightforward reading of the manual. The relator's argument required actually turning both QZ and QX into something other than what they said. And so for those reasons, the district court was correct to dismiss these claims at the end. What's the relationship? Does the record or the manual, the materials, say anything about the relationship of the rate of reimbursement if the QK medical direction code is used by the physician versus the AD code medical supervision by the physician? It has to do with how many units the physician can get paid for. So there is a difference. And at one point in time, CRNAs and doctors were not paid on the same fee schedule, so there was a lot of, I think, calculation of how to submit these claims and how to calculate what the payment would be because the fee schedules were different. The fee schedules have changed over time so that the CRNA fee schedule and the physician fee schedule are now, there's more comparability among the two of them. But at the time that these codes were developed and that CRNA payment was put in place, that was not initially the situation. So if you're the outside practice, say, that has the physician, if you have medical direction submit a QK versus if you have medical supervision submit an AD, what's the difference in payment? I believe one is 50% of the allocable units for that surgery and one is either three or four units, depending on whether the physician actually provides induction for the anesthesia. For all of these reasons, we think that the district court was exactly right in its ruling and its denial of reconsideration four years later. We would ask that this court affirm. All right. Thank you, counsel. All right, we'll hear rebuttal. Thank you. Thank you, just very briefly. So the supplemental excerpt of record site that was just discussed, I mean, we cited industry understanding to the contrary. If you look at docket 81 at page 23, that was our brief opposing the motion to dismiss. We cited a bunch of articles from anesthesiology groups and nursing groups saying that QZ cannot be used in the situation of medical supervision. But none of that needs to be resolved now. These are just factual disputes about what the understanding was about the code. We're just here on a Rule 12b-6 motion, and we allege that the industry understanding was that the correct way to code that was AD for the doctor, because you have to account for the doctor, and I still haven't heard the other side explain how you do that with a QZ code. You have to account for the doctor, and you can't use both AD and QZ, because that results in either an overpayment or a situation where there's two different prices for exactly the same procedure, neither of which makes any sense. CMS has not drawn a line. There is no line that CMS has drawn that says the only thing that matters is medical direction. The only place that that line emerges from is the definitions of the code, where they use the term medical direction to describe the two codes for nurses. Now, maybe what they mean by medical direction there is something different than what they mean by medical direction for the codes for the doctors. But again, this is just a factual question, and we allege something different than that. And I think all of the confusion that we're going through here, and this is confusing. There's a lot to keep straight, and the answers about how these things are paid do not emerge from the regulations. You cannot just read the regulations and know how these claims are paid. You can't even, as you point out, Your Honor, read the manual and understand how these codes are paid. The idea that the CRNA gets 100% of the units if you submit the QZ code, where does that come from? That's not anywhere in the manual. It's a factual issue. It's a factual allegation of the complaint. And all of this just shows why it is dangerous for a judge to try to interpret these modifiers in the way that the district court did at the motion-to-dismiss stage. We could have a completely different discussion about this issue if we were here on summary judgment with a factual record, but we're not. And so our basic position is that the court's ruling was premature, that we were entitled to the truth of our allegations at the pleading stage, and that the court should reverse. Thank you very much. Thank you, counsel. The case just argued will be submitted, and we will stand in recess for five minutes.
judges: COLLINS, VANDYKE, MENDOZA